UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

BERRY JOHNSON,
   Plaintiff,

vs.                                                                      No. 06-1088

THOMAS BROWN, et al
   Defendants

## ORDER

     This cause is before the court for consideration of various pending motions including: the defendants' motions for summary judgement [d/e 37, 40]; plaintiff's motion for reconsideration of the court's June 26, 2007 Court Order [d/e 49]; plaintiff's renewed motion for appointment of counsel [d/e 52] and plaintiff's motion for a status report. [d/e 53]

### I. BACKGROUND

     The plaintiff has filed his lawsuit pursuant to 42 U.S.C. §1983 claiming his constitutional rights were violated at the Pontiac Center. Pursuant to its merit review of the complaint, the court finds that the plaintiff has adequately alleged that Defendant Livingston County States Attorney Thomas Brown and Warden Guy Pierce violated the plaintiff's Eighth Amendment rights when they denied him meaningful access to the courts. The claim is against the defendants in their individual capacities only.

     Specifically, the plaintiff alleges that as the result of an incident in his cell on October 18, 2004, his cell was designated a crime scene. The plaintiff says he was removed from his cell and he was not allowed to get his legal materials despite numerous grievances and letters. The plaintiff says he therefore was unable to file a lawsuit challenging his criminal conviction.

### II. FACTS

     In October of 2003, the plaintiff was incarcerated in Cell No. 635 at the Pontiac Correctional Center. On October 18, 2003, there was an incident between the plaintiff's cell mate and correctional staff. The plaintiff's complaint alleges that he was held hostage by his cell mate and his cell mate was ultimately killed by correctional Staff. The plaintiff was taken to the Health Care Unit were he remained for 15 days. After the plaintiff was released from the medical unit, he was assigned to a different cell. However, the plaintiff's property was still in Cell No. 635.

     The plaintiff says he is currently serving a sentence of natural life due to a Cook County murder conviction. The plaintiff says the conviction is unconstitutional, and he has been preparing a petition for relief from judgement. The plaintiff claims he has not been able to file his petition because the legal documents he needs are still in Cell No. 635. The plaintiff says he needs documents including legal briefs, research and statistical evidence from the jury commissioner's

office and the Census Bureau of Cook County.

The plaintiff filed a grievance concerning the denial of legal materials and received a letter from the Administrative Review Board dated June 30, 2005. The letter stated that "this office has been advised that due to an ongoing investigation, the State's Attorney's Office will not release the contents of the cell." (Plain. Comp, June 30, 2005 ltr). The plaintiff was advised that if he needed legal paperwork, he could contact the Warden who would then contact the State's Attorney about obtaining copies of the paperwork.

The plaintiff says he sent letters to the Warden on September 18, 2005 and January 9, 2006 and asked him to forward the letters to Defendant States Attorney Brown. The plaintiff says he does not know if Defendant Brown received those letters and Defendant Brown says he does not recall receiving them. (Def. Memo, Plain. Depo, p. 46, 50-55). Defendant Brown claims he did not know about the plaintiff's request for access to his legal materials prior to receiving a copy of this lawsuit in early October of 2006. On October 12, 2006, Defendant Brown sent a letter to the Warden indicating that he did not object to the plaintiff having access to his cell.

Defendant Guy Pierce says he is currently a Deputy Director for the Illinois Department of Corrections and has held that position since April 1, 2006. Prior to that, Pierce says he was the Warden at Pontiac Correctional Center. He held that job from October 18, 2004 to March 31, 2006. Pierce says he has been employed in one capacity or another with the Illinois Department of Correction for more than 20 years.

Defendant Pierce says before he was the warden at Pontiac, the Illinois State Police designated Cell No. 635 as a crime scene in an on-going criminal investigation. The cell remained sealed when the defendant became warden and during Pierce's entire tenure.

> Based on my conversation with representatives from the State's Attorney's Office, it was my understanding that I had no authority to open the cell, direct others to open the cell, remove items from the cell, or direct that items be removed from the cell without first receiving permission from the Illinois State Police. (Def. Memo, Pierce Aff, p. 1)

Pierce says he is aware that the Illinois State Police gave the plaintiff permission to enter Cell No. 635 on October 24, 2006 and March 9, 2007 to retrieve legal documents. Pierce adds that to his knowledge, no one else has entered or removed anything from the cell during the time it has been designated as a crime scene.

The plaintiff first entered his cell on October 24, 2006. The plaintiff claims he was not able to retrieve all the legal documents he needed because the cell was a mess and he was rushed. (Plain. Depo, p. 36-38) However, the plaintiff admits after this date, he did not ask anyone for the opportunity to go back into the cell.

An incident report was prepared by Major Blackard regarding the plaintiff's second trip to the cell on March 9, 2007. The officer says he took the plaintiff to Cell No. 635 along with Assistant Attorney General Lindsay Sweet and an Illinois Department of Corrections Attorney.

The plaintiff "was given the opportunity to search the entire cell and retrieve any an all legal paperwork belonging to him." (Def. Memo, Incident Report)   The plaintiff was in the cell approximately 35 minutes and stated that he had retrieved all of his legal documents.  The officer says he told the plaintiff "there would not be another opportunity for him to enter the cell once it was re-secured" and he again asked the plaintiff "if he was sure that he had all legal paperwork belonging to him." *Id.*  The officer says the plaintiff indicated that he understood and again said he had all his documents.

The plaintiff did file a direct appeal of his conviction with the Illinois Appellate Court. (Def. Memo. Ex A).  Among the issues raised was a claim that he was denied equal protection of the law because the jury selection process in his trial resulted in the intentional exclusion of African-Americans.  The Illinois Appellate Court rejected the plaintiff's arguments. (Def. Memo, Ex. B., *People v. Johnson,* 254 Ill.App. 3d 111, 667 N.E.2d 1106(Table)(Ill.App. 1st Dist 1993).

In 1995, the plaintiff filed a petition for post-conviction relief, which was denied by the trial court. (Def. Memo, Ex. C).  In his petition, the plaintiff again alleged that African Americans had been unconstitutionally excluded from Cook County juries.

In 1998, the plaintiff was granted leave to file a late appeal of the denial of his petition for post-conviction relief. (Def. Memo, Ex C).  In a supplemental brief, the plaintiff again raised the issue of jury selection methods.  The denial of plaintiff's petition for post-conviction relief was affirmed by the Illinois Appellate Court. (Def. Memo, Ex. C, *People v. Johnson,* 312 Ill.App. 3d 1204, 769 N.E.2d 571(Table)(Ill.App. 1st Dist. 2000)(appeal denied, *People v. Johnson,* 734 N.E.2d 896 (Ill. 2000).

In 2003, the plaintiff was preparing to file another petition for post-judgement relief pursuant to 735 ILCS 5/2-1401 based on "newly discovered evidence." (Def. Mot., Plain Ex. p. 14-17).  The plaintiff again planned to argue that his conviction was unconstitutional because African Americans were excluded from the jury.  This time, the plaintiff had statistical evidence he had obtained from the jury commission and the census bureau.

The plaintiff admits he did not make any efforts to obtain copies of his missing legal documents from the clerk' s office, the public defender's office, any former attorneys or from the census bureau.  The plaintiff claims he did send letters to the jury commissioners office, but got no response. (Def. Memo, Plain. Depo. 20-21, 24-25, 34, 56).  The plaintiff also states that he is not necessarily looking for monetary damages in this case, as much as an opportunity to have his legal property returned. (Def. Memo, Plain Depo. P. 67-68)

### III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56©.  Any discrepancies in the factual record should be evaluated in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  The party moving for summary judgment must show the lack of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## IV. ANALYSIS

Both defendants state that the plaintiff has no evidence to demonstrate that they were personally involved in any constitutional deprivation. A defendant cannot be held liable under 42 USC §1983 unless the plaintiff can demonstrate that the defendant caused or participated in the alleged constitutional violation. *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982). For a supervisor to be held liable under 42 U.S.C. § 1983, he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. . ." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

Defendant States Attorney Brown says the only evidence the plaintiff has is his claim that he sent letters to the Warden and asked him to forward them to Defendant Brown. However, the plaintiff admits he does not know if the defendant received those letters and made no other attempt to notify him of his need for legal documents. Defendant Brown says his first notification came when he received a copy of this lawsuit, and he immediately sent a letter allowing the plaintiff to enter the cell. The courts agrees the plaintiff has failed to demonstrate that this defendant had any personal knowledge of the plaintiff's claims.

Defendant Warden Pierce says the only evidence the plaintiff has that he was personally liable for his claims is the response from the Administrative Review Board directing the plaintiff to ask the Warden about his legal property. In addition, the Warden states since the cell was a crime scene during his tenure, he did not have the authority to allow the plaintiff into the cell. Defendant Pierce's argument is not compelling. While the cell may have been declared a crime scene and under the control of others, the Administrative Review Board told the plaintiff to contact the Warden about access to his papers. It appears the Warden was notified of this fact since the same letter was sent to him. In addition, the Warden makes no reference to the two letters the plaintiff says he sent to him concerning permission to enter his cell.

The defendants also argue that the plaintiff was not denied meaningful access to the courts. The defendants say the plaintiff has failed to demonstrate that his inability to obtain papers in Cell 635 prejudiced his ability to file nonfrivolous claims. Prison officials have an affirmative duty to provide inmates with meaningful, but not unconditional, access to the courts. *Bounds v. Smith,* 430 U.S. 817, 825 (1977). The withholding of legal materials from inmates will not violate the right of access to the courts unless it prejudices a potentially meritorious legal challenge. *See Lewis v. Casey,* 518 U.S. 343, 351 (1996); *Marshall v Knight,* 445 F.3d 965, 968 (7th Cir. 2006).

The defendants say the plaintiff has failed to demonstrate that he had a nonfrivolous claim and he has failed to demonstrate that he was prejudiced in any way. The plaintiff has already raised the discriminatory jury procedures issue on direct appeal. The plaintiff apparently believes his additional statistical evidence and theories would result in his obtaining post-conviction relief. However, the plaintiff has failed to provide any information or evidence in support of this claim. The plaintiff has also failed to show that his claims would not be barred by *res judicata. See People v. Harris,* 794 N.E.2d 181, 187 (Ill. 2002).

In addition, the plaintiff has failed to show how he has been prejudiced . The plaintiff has not presented any evidence that these documents are irreplaceable. In fact, all of the documents the plaintiff says he needs are public records. The plaintiff admits he has made little effort to obtain additional copies. In addition, the plaintiff was allowed in his cell on two occasions to gather up his legal documents. The motion for summary judgement is granted.

## V.  MOTION TO RECONSIDER

On June 26, 2007, the court denied the plaintiff's motions for a court order. *See* June 26, 2007 Court Order. The plaintiff had filed a motion to subpoena any photograph or videotapes of his old cell from October 18, 2003 and after. [d/e 36]. The plaintiff claimed when he was given the opportunity to go to his old cell, he was still not able to locate certain documents. For instance, the plaintiff claimed he had copies of briefs that others had used to appeal their criminal convictions. The plaintiff also said he had statistical evidence that Cook County used racially discriminatory procedures to select jury members. The plaintiff said there was a security camera on the gallery and there should be photographs of his cell after he was removed on October 18, 2003. The plaintiff claimed he needed the photographs or videotapes to show who took these documents

The motion was denied. The court stated the plaintiff should make discovery requests to the defendants, and it was very doubtful the prison still had videotapes from years prior.

The plaintiff has now filed a motion to reconsider. [d/e 49] The plaintiff states there were pictures of his cell taken during the crime scene investigation, and copies of those pictures could demonstrate that his cell had been tampered with.

The motion is denied as moot. The plaintiff has failed to demonstrate that the defendants denied him meaningful access to the courts. In addition, all of the documents the plaintiff says he needs are public records.

## VII.  MOTION FOR APPOINTMENT OF COUNSEL

The plaintiff has filed another motion for appointment of counsel. [d/e 52] The plaintiff states that the "difficulty of the case, factually and legally, exceeds plaintiff's capacity as a layperson to coherently present it to the court or jury." (Plain Mot, p. 3) The plaintiff also claims his case will be prejudiced without legal representation.

The plaintiff filed his motion after he filed his response to the motions for summary judgement.  The motion is denied.  The difficulties faced by the plaintiff are the same as those faced by all pro se prisoners.  To decide whether counsel should be requested, the court asks, "'[G]iven the difficulty of the case, [does] the plaintiff appear to be competent to try it himself and, if not, would the presence of counsel [make] a difference in the outcome?'" *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995).  "Although a good lawyer may [do better than a *pro se* plaintiff], that is not the test, for if it was "'district judges would be required to request counsel for every indigent litigant.'" . *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir.1997).   The plaintiff's case is not complex.   In addition, the plaintiff was not able to show enough factual merit to his claims to warrant an inference that counsel would make a difference in the outcome.

**ITS IS THEREFORE ORDERED that:**

**1) The defendants motions for summary judgement are granted pursuant to  Fed. R. Civ. P. 56. [d/e 37, 40]   The clerk of the court is directed to enter judgment in favor of the defendant in accordance with this order.  The parties are to bear their own costs. This case is terminated.**

**2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)©.  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).**

**3) The agency having custody of the plaintiff is directed to remit the docketing fee of $250.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $250.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $250.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $250.00.**

**4) The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such a change.  Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.**

**5) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

**6) The plaintiff's motion for reconsideration of the June 26, 2007 Court Order [d/e 49] and motion for a status report [d/e 53] are denied as moot.**

**7) The plaintiff's motion for appointment of counsel is denied. [d/e 52]**

Entered this 10th day of March, 2008.

s\Harold A. Baker
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE